SCOTT E. BRADFORD, OSB # 062824
United States Attorney
District of Oregon
**SCOTT M. KERIN, OSB # 965128**
Assistant United States Attorney
Scott.Kerin@usdoj.gov
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

**PORTLAND DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **Case No. 3:25-cr-00164-AN** |
| **v.** | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| **MATTHEW EUGENE GARLOCK,** | |
| **Defendant.** | |

The government asks the Court to impose a sentence of 60 months' imprisonment, to be followed by a five-year term of supervised release. The defendant was a prolific downtown Portland fentanyl dealer whose history of dealing finally caught up with him when he was arrested on federal charges. Despite multiple prior arrests by the Portland Police Bureau, the defendant was allowed to return to the community where he went right back to selling an incredibly addictive, destructive, and deadly poison within downtown Portland. Defendant's prior arrests did nothing to deter him, but rather were merely a temporary inconvenience in his ability to peddle a poison for profit. That finally changed on April 4, 2025, when the defendant

was arrested on federal charges. Given the seriousness of his offense, his criminal history, and ongoing pattern of criminal activity the government believes such a sentence is reasonable.

**A. Summary of Proceedings.**

On May 27, 2026, the defendant pled guilty to Count 4 of his indictment which charged him with the felony crime of Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c). The maximum sentence the Court may impose is a term of life imprisonment, a fine of $250,000, and a five year term of supervised release. There is a five year mandatory minimum sentence and a $100 fee assessment.

In his Plea Agreement defendant admitted that:

> [B]eginning on or about January 19, 2025, and continuing until on or about April 4, 2025, within the District of Oregon, he was involved in selling fentanyl in downtown Portland, Oregon. As part of his drug trafficking activities here in Portland, Oregon, and despite multiple arrests by local law enforcement, he continued distributing fentanyl and on January 19, 2025, February 12, 2025, and finally on April 4, 2025, on each occasion, he was caught possessing 40 grams or more of a mixture and substance containing fentanyl, a Schedule II controlled substance, for purposes of further distribution.
>
> Additionally, in furtherance of his drug trafficking activities as noted above, on each of the occasions the defendant possessed fentanyl for purposes of further distribution he also possessed a firearm in furtherance of his drug trafficking activities, as noted below:
>
> - on or about January 19, 2025, he possessed a Ruger Security-380, .380 auto caliber pistol, serial number 387-75439;
> - on or about February 12, 2025, he possessed a Walther PPQ 9mm pistol, serial number FA02979; and,
> - on or about April 4, 2025, he possessed a Smith and Wesson M&P Shield 9mm pistol, with serial number HMT400.

> Each time the defendant was arrested his fentanyl and firearm would be seized and he would then go out and acquire additional fentanyl to sell and an additional firearm for protection.
>
> FBI Investigators would testify that drug dealers regularly possess firearms in furtherance of their drug trafficking activities and that firearms are considered “tools of the trade” that are used by drug traffickers to provide protection against being robbed of their drugs and the cash they make from selling drugs. The possession of these firearms by drug traffickers also greatly increases the risks to the community, to include law enforcement officials tasked with investigating and arresting these drug traffickers.

Plea Agreement ¶ 5.

A Presentence Report (PSR) has been completed. Sentencing is currently set for August 27, 2026. The government believes that the facts underlying the defendant’s count of conviction (PSR ¶¶ 15 - 24), his Sentencing Guideline calculations (PSR ¶ 29), his criminal history (PSR ¶¶ 32 – 45, 47) are accurately laid out in the PSR.

The defendant was initially arrested by the Portland Police Bureau (PPB) on January 19, 2025, and found to be in possession of approximately 30 grams of counterfeit pills manufactured with fentanyl (fentanyl pills), 138 grams of fentanyl powder, over $6,000 in cash, and a .380 caliber handgun. After he was arrested he was advised of his constitutional *Miranda* rights and interviewed. During the interview he admitted that he sold about 50 ounces of fentanyl a week and that he bought fentanyl for between $800 to $1,000 an ounce. He was released from state custody and returned to the community. Federal law enforcement was not notified.

On February 12, 2025, Portland Police Officers developed information that defendant was still selling fentanyl in downtown Portland. Acting in an undercover capacity, a Portland Police Officer contacted the defendant and ordered half an ounce of fentanyl. When the

defendant showed up to complete the deal he was again arrested by the police and found in possession of approximately 56 grams of fentanyl. A subsequent search of the defendant's residence, an apartment on NW Naito Parkway, resulted in the seizure of an additional six (6) grams of fentanyl, 10 grams of methamphetamine, a digital scale with drug residue on it, drug packaging material, and a 9mm handgun.

Once again the defendant was interviewed and he told the police that he had about 30 to 40 customers that he regularly sells fentanyl to, that he has been doing so for about three (3) months, that he does not use fentanyl, and that he will buy around 15 ounces of fentanyl from his suppliers at a time. He said he sells a half ounce of fentanyl for $600. Defendant was again released from state custody and allowed to return to the community. Federal law enforcement was not notified.

In late March 2025, the FBI received information that the defendant, known as "Ohio," was again selling fentanyl in downtown Portland, Oregon. The FBI then contacted the U.S. Attorney's Office and PPB-NOC. On April 4, 2025, as a result of a joint investigation conducted by the FBI, PPB Narcotics and Organized Crime Unit (NOC), PPB Central Precinct Neighborhood Response Team (NRT), the Multnomah County District Attorney's Office, and the U.S. Attorney's Office, the defendant was once again arrested and a search warrant was executed on his residence on NW Naito Parkway.

Inside the defendant's residence officers seized approximately 71 grams of fentanyl, scales, drug packaging material, $8,760 in cash, and a loaded 9mm handgun. The defendant was again interviewed and admitted he was still dealing fentanyl, that he had recently purchased five

///

ounces of fentanyl, and that he had the gun for protection because of all the cash he carried. This time the defendant was arrested on federal charges and held in custody.

The FBI then applied for and obtained a federal criminal complaint charging the defendant with possession with intent to distribute fentanyl and possession of a firearm in furtherance of a drug trafficking crime. The three firearms the defendant possessed in January, February, and April of this year form the basis for Count 4.

On April 7, 2025, the defendant made his initial appearance in federal court and the U.S. Magistrate Judge detained him as both a danger to the community and risk of non-appearance.

On April 15, 2025, the defendant was indicted for three counts of possession with intent to distribute fentanyl, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(B), and one count of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c).

**B. Sentencing Guideline Calculations.**

Pursuant to USSG § 2K2.4(b), based upon his conviction for Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c), defendant's Offense Level and initial advisory guideline sentence is the minimum term of imprisonment required by statute, which in this case is 60 months' imprisonment. PSR ¶ 28, Plea Agreement ¶ 7. There are no Chapter 3 or Chapter 4 adjustments under the Sentencing Guidelines. PSR ¶ 29.

Defendant's criminal history includes multiple felony and misdemeanor convictions and results in a Criminal History score of II. PSR ¶¶ 32 - 45.

///

///

**C. Government's Recommended Sentence.**

Pursuant to 18 U.S.C. § 3553(a), the government asks the Court to impose the sentence of 60 months' imprisonment as required by law, to be followed by a five-year term of supervised release.

The defendant's underlying crime is serious – he was an armed drug dealer selling large quantities of fentanyl in downtown Portland, Oregon, an area especially hard hit by the ravages of this poison. Illicit fentanyl is incredibly addictive, destructive, and deadly and it has been devastating both the District of Oregon and the country at large. According to law enforcement:

> Fentanyl and methamphetamine remain the primary drug threats, affecting community livability and contributing to drug-related overdose deaths and criminal activity, including crimes against persons and property in the HIDTA region. In 2023, fentanyl was linked to 75.9% of overdose deaths in Oregon and 51% in Idaho. Methamphetamine was present in 63.5% of Oregon's overdose deaths and 38% of Idaho's. Together, these two substances accounted for 41.3% of overdose fatalities in both states.

OREGON-IDAHO HIGH INTENSITY DRUG TRAFFICKING AREA (HIDTA) 2026 THREAT ASSESSMENT, 2025, at 5 (https://oridhidta.org/reports).

The death toll from fentanyl is truly frightening. For Americans aged 18 to 45, overdoses – primarily the result of illicit fentanyl – remain the leading cause of death. *CDC Reports Nearly 24% Decline in U.S. Drug Overdose Deaths*, CDC NEWSROOM (Feb. 25, 2025); *DEA Administrator on Record Fentanyl Overdose Deaths,* GET SMART ABOUT DRUGS (August 17, 2024). In 2022, within the United States, fentanyl was responsible for an average of more than 200 deaths every day and a total of 73,654 people died from fentanyl overdoses. *Are Fentanyl Overdose Deaths Rising in the U.S.*, USAFACTS (Sept. 27, 2023). Here in Oregon, between 2015 and 2021, Oregon experienced a 932% increase in fentanyl overdose deaths. *Fentanyl by State Report*, FAMILIES AGAINST FENTANYL (Feb. 4, 2023). In 2022, Oregon alone experienced a

total of 839 fentanyl related overdose deaths. OREGON HEALTH AUTHORITY OREGON DEPARTMENT OF EDUCATION FENTANYL & OPIOID RESPONSE TOOLKIT FOR SCHOOLS (January 2024). In 2023, within Oregon there were 1,833 overdose deaths, and of those 1,272 were the result of synthetic opioids, such as illicit fentanyl. *Oregon Overdose Prevention Dashboard*, OREGON HEALTH AUTHORITY (May 1, 2025). In 2023, "Oregon had the highest rate of increase in fentanyl deaths in the nation with a one-year increase of more than 67[%], compared to a national average of 5[%]." *Oregon, Washington see largest increases in fentanyl deaths since last year*, KPTV 12 (Sept. 26, 2023).

Even with the most recent decreases in overdose deaths, both nationally and in Oregon, "[f]entanyl continues to be the primary cause of drug overdose deaths in the United States," to include here within Oregon. *Fentanyl Continues to Be the Leading Cause of Overdose Deaths. What's Being Done to Combat Trafficking into the United States?,* WATCHBLOG: FOLLOWING THE FEDERAL DOLLAR, U.S. GOVERNMENT ACCOUNTABILITY OFFICE (Sept. 4, 2025); *Oregon overdose deaths are down, CDC data shows,* OREGON HEALTH AUTHORITY (May 16, 2025) (While "Oregon's overdose deaths decreased 22% between December 2023 and December 2024, a trend similar to that experienced nationwide . . . The count is still much higher than pre-pandemic years, with 1,480 deaths within that one-year time span, CDC data show."); *U.S. Overdose Deaths Decrease Almost 27% in 2024,* NATIONAL CENTER FOR HEALTH STATISTICS, U.S. CENTERS FOR DISEASE CONTROL AND PREVENTION (CDC) (May 14, 2025)( https://www.cdc.gov/nchs/pressroom/ releases/20250514) (in 2024 "there were there were an estimated 80,391 drug overdose deaths in the United States – a decrease of 26.9% from the

///

110,037 deaths estimated in 2023" and of those deaths, in 2023, 76,282 involved synthetic opioids (fentanyl) and in 2024, 48,422 involved synthetic opioids (fentanyl)).

Accordingly, after evaluating the competing sentencing factors outlined in 18 U.S.C. § 3553(a) which includes the nature and circumstances of the offense; the defendant's characteristics; the need for the sentence imposed to reflect the seriousness of the offense; the need for the sentence to promote respect for the law; the need for the sentence to afford adequate deterrence to criminal conduct; the need for the sentence to provide just punishment for the offense; the need to protect the public from further crimes of the defendant; and, the need to provide defendant with needed training or other corrective treatment, we ask the Court to impose the mandatory minimum sentence of 60 months' imprisonment, to be followed by a five year term of supervised release. We believe such a sentence is reasonable and warranted under the circumstances.

At the time of sentencing, we ask the Court to dismiss Counts 1, 2, and 3.

There is an appeal waiver.

Dated: August 19, 2026.

Respectfully submitted,

SCOTT E. BRADFORD
United States Attorney

/s/ Scott Kerin

SCOTT M. KERIN, OSB # 965128
Assistant United States Attorney